UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**CRYSTAL STOKES, INDIVIDUALLY
AND ON BEHALF OF HER MINOR
SON, LB, Plaintiff**

**VERSUS**

**GUY FABER, SHARON MEGGS-
HAMILTON, VALERIE JOHNSON,
BRANDON WILLIAMS, THE
JEFFERSON PARISH SCHOOL
BOARD, BILLY MATRANGA, DAVID
MALVEAUX, AND JOSEPH P.
LOPINTO, IN HIS OFFICIAL
CAPACITY AS JEFFERSON PARISH
SHERIFF, Defendants**

DOCKET NUMBER: _____

SECTION: _____

MAGISTRATE: _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

The plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, through undersigned counsel, respectfully says that:

### NATURE OF THE CASE

1. This is a civil action generally arising out of the wrongful arrest and school discipline of a child stemming from a photograph that other children posted on social media. Plaintiff claims, inter alia, under federal law, that she and her son were deprived of due process, equal protection, and civil rights – and under state law – that they were deprived of due process and the victims of torts, including false arrest. Plaintiff seeks to recover for her and her son's injuries, as well as for punitive damages and attorneys' fees.

## PARTIES

2.  Plaintiff, Crystal Stokes, is a citizen of the State of Louisiana. She brings this action individually and on behalf of her minor child, LB. LB was a 10th grade student at Grace King High School in Metairie, Louisiana, a public school under the auspices of the Jefferson Parish School Board, during February of 2018.

3.  Defendant, Guy Faber, is, upon information and belief, a citizen of the State of Louisiana. Mr. Faber taught a LB in a health class at Grace King High School. During all times discussed in this complaint, Mr. Faber acted under color of state law by virtue of his position and authority as a teacher for the Jefferson Parish School Board. During all times discussed in this complaint, Mr. Faber acted in the course and scope of his employment with the Jefferson Parish School Board.

4.  Defendant, Sharon Meggs-Hamilton, is, upon information and belief, a citizen of the State of Louisiana. Ms. Meggs-Hamilton was the principal of Grace King High School while LB was a student there. During all times discussed in this complaint, Ms. Meggs-Hamilton acted under color of state law by virtue of her position and authority as a principal for the Jefferson Parish School Board. During all times discussed in this complaint, Ms. Meggs-Hamilton acted in the course and scope of her employment with the Jefferson Parish School Board.

5.  Defendant, Valerie Johnson, is, upon information and belief, a citizen of the State of Louisiana. Ms. Johnson was the disciplinarian of Grace King High School while LB was a student there. During all times discussed in this complaint, Ms. Johnson acted under color of state law by virtue of her position and authority as a disciplinarian for the Jefferson

Parish School Board. During all times discussed in this complaint, Ms. Johnson acted in the course and scope of her employment with the Jefferson Parish School Board.

6. Defendant, Brandon Williams, is, upon information and belief, a citizen of the State of Louisiana. On information and belief, the President or Superintendent of the Jefferson Parish School Board appointed Mr. Williams to serve as a hearing officer over the expulsion of LB from Grace King High School. During all times discussed in this complaint, Mr. Williams acted under color of state law by virtue of his position and authority as a hearing officer for the Jefferson Parish School Board. During all times discussed in this complaint, Mr. Williams acted in the course and scope of his employment with the Jefferson Parish School Board.

7. Defendant, the Jefferson Parish School Board (the "School Board"), is a political subdivision of the State of Louisiana, established through Louisiana's Constitution and Revised Statutes. The School Board controls the employees of the schools in Jefferson Parish, including those at Grace King High School. The School Board employed Mr. Faber, Ms. Meggs-Hamilton, Ms. Johnson, and Mr. Williams during all times discussed in this complaint.

8. Defendant, Billy Matranga, is, upon information and belief, a citizen of the State of Louisiana. He was a deputy of the Jefferson Parish Sheriff who had attained the rank of sergeant. The Sheriff assigned Sgt. Matranga to the Sheriff's Juvenile Division Police on Campus Section and stationed him at Grace King High School while LB was a student there. During all times discussed in this complaint, Sgt. Matranga acted under color of state law by virtue of his position and authority as a Jefferson Parish Sheriff's Deputy. During

all times discussed in this complaint, Sgt. Matranga acted in the course and scope of his employment with the Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff.

9. Defendant, David Malveaux, is, upon information and belief, a citizen of the State of Louisiana. He was a deputy of the Jefferson Parish Sheriff who had attained the rank of captain. The Sheriff assigned Capt. Malveaux to the Sheriff's Juvenile Division Police on Campus Section and he supervised the activities of Sgt. Matranga. During all times discussed in this complaint, Capt. Malveaux acted under color of state law by virtue of his position and authority as a Jefferson Parish Sheriff's Deputy. During all times discussed in this complaint, Capt. Malveaux acted in the course and scope of his employment with the Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff.

10. Defendant, Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, is a citizen of the State of Louisiana. Sheriff Lopinto employed Sgt. Matranga and Capt. Malveaux during the time that LB was a student at Grace King High School.

## JURISDICTION AND VENUE

11. Plaintiff brings this action against defendants to redress the deprivation of rights the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Louisiana state law. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

12. Plaintiff invokes this Court's supplemental jurisdiction over her and her son's claims against defendants for Louisiana state law violations, pursuant to 28 U.S.C. § 1367, as such claims form part of the same case or controversy as their claims arising under federal law.

13. Venue is proper in this District, under 28 U.S.C. § 1391(b)(1) and (2) because most of, if not all, the defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred within this District.

### FACTS COMMON TO ALL COUNTS

14. In the fall of 2018, LB was a fifteen-year-old 10th grader at Grace King High School.

15. On or about the morning of February 21, 2018, LB was in his second period health class when his teacher, Guy Faber, began a discussion with the student about the recent high school shootings elsewhere in the country. Mr. Faber stated to his students that the stereotypical high school shooter was a white male. LB, a male, was the only white person in the classroom of approximately 25 students and the only person who fit Mr. Faber's description of the stereotypical high school shooter. The other students began to make jokes about LB fitting Mr. Faber's description. For instance, several students jokingly asked him to spare them from being shot. LB went along with the jokes and told them they would be okay. The entire class, including Mr. Faber, laughed at those jokes.

16. One student, continuing the joke about LB fitting Mr. Faber's description of the stereotypical high school shooter, got out of his desk, walked to the front of the classroom, drew a large caricature of LB on the white board affixed to the front of the classroom and wrote the words "Future School Shooter" in large letters above the caricature. Another student asked the drawing student to change the hair on the caricature to match LB's hair more closely. Several students asked LB to pose next to the drawings so that they could take photographs. Mr. Faber observed the student draw the caricature and words above it and heard the students ask LB to pose next to the drawings so that they could take

photographs. Mr. Faber took no steps to discourage his students actions and instead laughed along with the students at the drawings on the whiteboard.

17. To go along with the students and Mr. Faber's joke about him fitting Mr. Faber's description of the stereotypical high school shooter, LB complied with the students request, got out of his desk, walked to the front of the classroom, and posed next to the caricature, while several of the other students took photographs with their cellphones. Mr. Faber observed all this occur and took no action to stop or even dissuade the students. Again, Mr. Faber laughed along with students when LB posed next to the caricature while the students took LB's photographs. LB walked around the class giving hand gestures, such as "fist bumps," to the students in response to their jests asking LB to spare them. Mr. Faber observed all this and laughed along with his class.

18. The following morning, LB went to his first period class. One of Grace King High School's dean of students, came to his classroom and asked LB to come to the principal's office. At the office, he met with Sgt. Billy Matranga of the Jefferson Parish Sheriff's Office, who was wearing a police uniform and badge, as well as carrying a firearm. Sgt. Matranga restrained LB with handcuffs and placed him in the rear of a marked police vehicle parked outside of the school. Sgt. Matranga then brought LB to the Jefferson Parish Sheriff's Office Detective Bureau in Harvey, Louisiana. Sgt. Matranga then locked LB in a holding cell for over an hour.

19. Sgt. Matranga contacted LB's mother, Crystal Stokes, and asked her to come to the detective bureau. When she arrived, Sgt. Matranga brought her to the cell where he had imprisoned LB. Sgt. Matranga questioned LB about the photographs and possibly a video

of LB posing next to the caricature in health class. Sgt. Matranga advised that the photographs of LB that the other students posted circulated through social media sites and this caused parents and members of the media to contact the school and the Jefferson Parish Sheriff's Office. During the questioning, Sgt. Matranga learned that during LB's health class Mr. Faber told the students that the stereotypical school shooter was a white male, which lead the other students to joke with LB because he was the only one to fit this description; that another student drew the picture and caption; that the other students asked LB to pose with the drawings; and that other students, but not LB, posted the photographs on social media. Sgt. Matranga learned that the teacher, Mr. Faber, had full view of LB complying with the other students' request and that Ms. Faber gave his tacit consent to the students' actions. Sgt. Matranga was aware that Mr. Faber was present during this entire episode, initiated the joke that lead to LB appearing in the photographs standing next to the caricature and caption on the whiteboard and laughed along with the students.

20. On information and belief, Sgt. Matranga's supervisor, Capt. David Malveaux learned of the above circumstances that lead to LB appearing in the photographs, including that Mr. Faber started and participated in this joke with the students in his class.

21. On or about February 22, 2018 at 8:15 a.m., Mr. Faber signed a document stating that in his health class the day before, "someone" wrote the caption next to the caricature of LB, but that he had not noticed it until "after the students left the room." Mr. Faber claimed that he saw LB draw a picture of himself earlier and that he "did not have an opportunity to ask the students because they were all gone." These statements were false as Mr. Faber was fully aware of who wrote the caption and the caricature during class. Mr. Faber

intentionally made these false statements to avoid trouble for himself because of public concern about what occurred in his classroom.

22. Anyone seeing the photographs of LB standing next the caricature and caption that the students posted on social media and being aware of the layout of the classroom would instantly realize that it was nearly impossible for Mr. Faber to have signed a truthful document. It was nearly impossible for someone to have been in that classroom and missed seeing the drawings, posing, and photographs being taken at the very front of the classroom.

23. Sgt. Matranga and, on information and belief, Capt. Malveaux were aware of the photographs and layout of the classroom and thus aware of the implausibility of the statements in the document Mr. Faber signed.

24. On information and belief, Sgt. Matranga and Capt. Malveaux read the document Mr. Faber signed and realized it lacked credibility.

25. Additionally, all students who were present in the classroom were aware of Mr. Faber's involvement and that the photographs were produced at the request of the other students to further the joke initiated by the teacher's comments about the stereotypical shooter being a white male and LB fitting that description. Sgt. Matranga and, on information and belief, Capt. Malveaux either interviewed the other students present in the classroom and disregarded their statements, or improperly failed to conduct such interviews before taking any action against LB.

26. Despite knowing that the photographs were the result of a joke the students' teacher initiated, Sgt. Matranga and Capt. Malveaux decided to formally arrest LB, accusing him of violating Title 40 of Louisiana Revised Statutes, § 40.1, TERRORIZING, which provides:

> A. Terrorizing is the intentional communication of information that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, with the intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the general public.

> B. It shall be an affirmative defense that the person communicating the information provided for in Subsection A of this Section was not involved in the commission of a crime of violence or creation of a circumstance dangerous to human life and reasonably believed his actions were necessary to protect the welfare of the public.

> C. Whoever commits the offense of terrorizing shall be fined not more than fifteen thousand dollars or imprisoned with or without hard labor for not more than fifteen years, or both.

27. Probable cause, or even reasonable suspicion, did not exist that LB committed the crime of TERRORIZING, or any other crime. For instance, it was obvious that LB had absolutely no intent to communicate anything about an imminent violent crime or that there were any circumstances dangerous to human life. It was also obvious that LB had no intent to cause members of the general public to be in any fear, to evacuate anywhere, or to disrupt the public.

28. The reason that Sgt. Matranga and, on information and belief, Capt. Malveaux decided to arrest LB was in reaction to public concern resulting from the other children posting photographs of LB. Sgt. Matranga and, on information and belief, Capt. Malveaux were completely aware of LB's innocence yet chose to arrest him in bad faith to quell the public concerns and not because of any good faith belief that LB committed a crime.

29. Sgt. Matranga placed LB in handcuffs and then transported LB to the Rivarde Detention Center in Gretna, Louisiana, where LB was formally booked, which included fingerprinting and having his "mug shot" taken.

30. Sgt. Matranga prepared or gave information that went into a "Juvenile Arrest Register" that falsely stated LB had given a voluntary statement admitting that he knowingly created "terror in the school, students, faculty, staff, and parents." Sgt. Matranga deliberately lied in this document to justify his arrest of LB while knowing that it would be used by the courts and others to wrongfully restrain LB's freedom. Sgt. Matranga omitted any mention Mr. Faber's involvement in the incident from the "Juvenile Arrest Register" for the same malicious reasons.

31. Sgt. Matranga wrote, and Capt. Malveaux approved, a police report describing the reasons for arresting LB. The report failed to mention a single word about Mr. Faber being present and involved in the joke that lead to LB appearing in the pictures. These officers intentionally repressed these exculpatory facts from being made known to those reviewing the report, such as the Jefferson Parish District Attorney or the courts. Sgt. Matranga and Capt. Malveaux excluded this information from the report so that their arrest of LB would appear justified.

32. LB spent the night in jail. The following morning, he went to the Jefferson Parish Juvenile Court. The judge in that court allowed LB to be released, but only on the conditions of house arrest and that LB wear an electronic ankle bracelet monitoring device. On information and belief, the judge was unaware of Mr. Faber's involvement in the events leading to LB's arrest because Sgt. Matranga and Capt. Malveaux omitted this information

from the documents submitted to the Juvenile Court for the judge to consider when determining the conditions of a juvenile's release. Had Sgt. Matranga and Capt. Malveaux made that court aware of Mr. Faber's involvement, the judge would have released LB on lesser or no conditions at all.

33. After receiving Sgt. Matranga's and Capt. Malveaux's report that omitted Mr. Faber's involvement and the "Juvenile Arrest Register" that falsely described LB's statement, the Jefferson Parish District Attorney filed a Petition in the Jefferson Parish Juvenile Court on or about February 27, 2018, accusing him of committing the crime of TERRORIZING.

34. By February 23, 2018, Grace King High School's Principal, Sharon Meggs-Hamilton, and on information and belief, the school's principal, Valerie Johnson, were fully aware of the events that occurred in health class, including that Mr. Faber initiated the joke that LB looked like a stereotypical school shooter; that a different student drew the caricature and words above it; that the other students asked LB to pose in front of the caricature so they could take pictures; that it was the other students who posted the pictures; and that Mr. Faber was present and laughed along with the students at what was perceived by all as a joke. They were aware of the incredibility of Ms. Faber's written statement denying his knowledge of how the picture came into being. Nonetheless, Ms. Meggs-Hamilton and, on information and belief, Ms. Johnson, decided to suspend LB from school.

35. During the suspension, LB did not receive any teaching, educational resources, materials, or any aids to keep up with his classwork. The suspension lasted for about two weeks when Ms. Meggs-Hamilton, and, on information and belief, Ms. Johnson, decided to recommend that the School Board expel LB from Grace King High School, despite these defendants'

awareness that LB did nothing without the approval of his teacher and nothing in violation of any school rules.

36. On or about March 8, 2018, Brandon Williams acted as the School Board's hearing officer to determine whether to follow the recommendation to expel LB. During the hearing, Ms. Meggs-Hamilton provide an oral statement to the hearing officer merely saying that LB was implicated in the photographs. She failed to provide Mr. Williams the exculpatory information that Mr. Faber initiated the joke and was present for the entire incident. LB also gave a statement that more fully described the incident and Ms. Faber's involvement. Nothing in this hearing suggested in any way that LB violated any school or School Board rule. Nonetheless, Mr. Williams approved the recommendation to expel LB. On information and belief, the School Board ratified Mr. Williams's decision.

37. Ms. Meggs-Hamilton, Ms. Johnson, Mr. Williams, and the School Board were fully aware that LB did not violate any school or School Board rule and that he acted with the full consent of his teacher, yet decided to have him expelled nonetheless. Their actions were malicious and in bad faith as their motive was to quell the public concerns and not because of any good faith belief that LB did anything wrong.

38. LB was then forced to go to school at John H. Martyn Alternative School in Jefferson, Louisiana, a place the School Board sends "at-risk students." When he first got arrived, a fellow student approached him while LB was eating lunch on a bench and pushed him off the bench, accusing him of being a school shooter.

39. Ms. Meggs-Hamilton, Ms. Johnson, and Mr. Williams knew, or were substantially certain, that their wrongful expulsion of LB would make him be forced to attend a school with the "at-risk students," which would subject him to the increased risk of violence.

40. Ms. Stokes was forced to retain an attorney to defend her son against the Petition in Juvenile Court. On or about March 16, 2018, LB's attorney requested the Jefferson Parish Juvenile Clerk of Court issue a subpoena to Mr. Faber to appear in that court. On information and belief, the Jefferson Parish District Attorney learned about Mr. Faber's involvement because of LB's counsel's subpoena request, realized LB's clear innocence, and on March 28, 2018, dismissed the Petition. The Juvenile Court judge then removed the restrictions on LB's release.

41. LB finished the remaining school year at John H. Martyn Alternative School. The School Board advised that he was to return to Grace King High School for the following school year. LB and his mother feared for LB's safety at Grace King High School because the officers' arrest and the school administrator's expulsion of him gave imprimatur to the erroneous belief that he had planned on being a school shooter. A counsellor at John H. Martyn Alternative School wrote a letter to the School Board urging that LB not have to attend Grace King because of his fears. LB has attended Riverdale High School since. Riverdale is much further away from Ms. Stokes and LB's home than is Grace King, creating a hardship and expenses associated with the longer travel.

42. The actions of the defendants have caused, and continue to cause, Ms. Stokes and LB to suffer:

    a.  The loss of LB's freedom while he was arrested, jailed, and restricted by the Jefferson Parish Juvenile Court;

    b.  The incurrence of attorneys' fees in connection with LB's wrongful arrest and prosecution;

    c.  The loss of Ms. Stokes' income while she had miss work to attend court and other matters related to this incident;

    d.  Damage to LB's reputation; and

    e.  Mental anguish and emotional distress.

## COUNT I – FEDERAL DUE PROCESS

43. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

44. Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, and David Malveaux actions, collectively and individually, violated rights that the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution guarantee to Ms. Stokes and her son.

45. Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, and David Malveaux acted under color of state law and custom when they subjected Ms. Stokes and LB deprivation of their federal rights to due process. Plaintiff asserts a claim against these defendants under Title 42 of the United States Code §1983.

46. On information and belief, Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, Billy Matranga, and/or David Malveaux conspired to impede, hinder, obstruct, or defeat, the due course of justice with the intent to deny Ms. Stokes and LB the equal

protection of the laws and to injure them for lawfully enforcing their rights to the equal protection of the laws. Plaintiff asserts a claim against these defendants under Title 42 of the United States Code §1985.

47. Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, Billy Matranga, and David Malveaux acted in both their individual and official capacities when subjecting plaintiff and her son to deprivations of their civil rights. Plaintiff sues them in their individual and official capacities.

48. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the deprivation of her and her son's federal constitutional rights from Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, and David Malveaux. She identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the Juvenile Court proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

49. Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, Billy Matranga, and David Malveaux acted with willful and wanton indifference to and deliberate disregard for the plaintiff's and her son's constitutional rights, so plaintiff is entitled to and demands punitive damages.

50. Pursuant Title 42 of the United States Code §1988(b), plaintiff is entitled to and demands recovery of attorney's fees and costs from Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, and David Malveaux.

## COUNT II – STATE DUE PROCESS

51. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

52. Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, and David Malveaux actions, collectively and individually, violated rights Article 1, §§ 2, 3, 5, 7, 12, and 18 of the Louisiana Constitution guarantee to Ms. Stokes and her son.

53. The School Board is vicariously liable to plaintiff for Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, and Brandon Williams violations of plaintiff and her son's state constitutional rights.

54. Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, is vicariously liable to plaintiff for Billy Matranga's and David Malveaux's violations of Ms. Stokes and LB's state constitutional rights.

55. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the deprivation of her and her son's state constitutional rights from Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff. She identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the Juvenile Court proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

## COUNT III – FALSE ARREST/BATTERY

56. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

57. Billy Matranga and, on information and belief, David Malveaux, intentionally detained LB without lawful justification.

58. Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, is vicariously liable under La. C.C. Art. 2317 to plaintiff for Billy Matranga's and David Malveaux's false arrest of and battery to LB.

59. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the false arrest of and battery to LB against Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, under La. C.C. Art. 2315. She identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the Juvenile Court proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

## COUNT IV - MALICIOUS PROSECUTION

60. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

61. Guy Faber, Billy Matranga, and, on information and belief, David Malveaux, improper actions were the legal cause of the District Attorney filing the Petition against LB in Jefferson Parish Juvenile Court.

62. That proceeding that began with this Petition ended in favor of LB and lacked probable cause.

63. Guy Faber, Billy Matranga, and, on information and belief, David Malveaux acted with malice because of their ulterior motives in taking these actions.

64. Ms. Stokes and her son suffered damages because of the proceedings, including LB being on house arrest with an electronic monitoring ankle bracelet, incurring attorneys' fees, Ms. Stokes missing work for court, as well as emotional and mental distress.

65. Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, is vicariously liable under La. C.C. Art. 2317 to plaintiff for Billy Matranga's and David Malveaux's actions that lead to the Jefferson Parish District Attorney filing the Petition against LB.

66. The School Board is vicariously liable under La. C.C. Art. 2317 to plaintiff for Guy Faber's actions that lead to the Jefferson Parish District Attorney filing the Petition against LB.

67. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the malicious prosecution of LB against Guy Faber, the School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, under La. C.C. Art. 2315. She identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the Juvenile Court proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

### COUNT V - DEFAMATION

68. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

69. Guy Faber, Billy Matranga, and, on information and belief, David Malveaux made false and defamatory statements concerning LB.

70. They made these statements, without privilege, to the others, including but not limited to the Jefferson Parish District Attorney, the Jefferson Parish Juvenile Court, people at the Rivarde Detention Center, the School Board.

71. They made these false statements intentionally, or in the most favorable light to them, grossly negligently.

72. Those statements resulted in damage to LB and his mother, including making others in the community believe that LB really intended to cause violence at his school.

73. Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, is vicariously liable under La. C.C. Art. 2317 to plaintiff for Billy Matranga's and David Malveaux's false and defamatory statements about LB.

74. The School Board is vicariously liable under La. C.C. Art. 2317 to plaintiff for Guy Faber's false and defamatory statements about LB.

75. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the defamation of LB against Guy Faber, the School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, under La. C.C. Art. 2315. She identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the Juvenile Court proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

## COUNT VI - DELICTUAL LIABILITY

76. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

77. The actions of Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, and on information and belief, David Malveaux, were malicious, willful, and deliberate and constitute fault under La. C.C. Art. 2315.

78. Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, is vicariously liable under La. C.C. Art. 2317 to plaintiff for Billy Matranga's and David Malveaux's actions regarding LB.

79. The School Board is vicariously liable under La. C.C. Art. 2317 to plaintiff for Guy Faber's, Sharon Meggs-Hamilton's, Valerie Johnson's, and Brandon Williams's actions regarding LB.

80. The plaintiff is entitled to and demands recovery of all damages proximately-caused by the faulty actions affecting LB against Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, under La. C.C. Art. 2315. She identifies these damages, non-exclusively, as follows: loss of freedom; incurring of attorneys' fees in the Juvenile Court proceedings; damage to reputation; past, present and future, emotional upset and distress, and other psychological sequelae; together with all other damages shown at trial.

## ON ALL COUNTS

81. Plaintiff incorporates the allegations set forth in all other paragraphs of this complaint.

82. Plaintiff strictly reserves the right to amend and supplement this complaint as necessary concerning damages.

83. Plaintiff strictly reserves the right to amend and supplement this complaint as necessary concerning facts and parties.

84. To the extent that the legal or factual basis of plaintiff's claims may be mutually exclusive, plaintiff pleads them in the alternative under FRCP Rule 8.

85. Plaintiff requests a jury trial on all issues, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, the plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, prays that the Court issue summons to Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the Jefferson Parish School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his official capacity as Jefferson Parish Sheriff, instructing the defendants to answer this complaint.

Under COUNT ONE – FEDERAL DUE PROCESS, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, and against the defendants, Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the Jefferson Parish School Board, Billy Matranga, and David Malveaux, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid; a monetary amount for attorneys' fees on the deprivation of constitutional rights; and for all costs of these proceedings with all expert

fees taxed as costs of court. She further prays for judgment against Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, Billy Matranga, and David Malveaux, in solido, for a monetary amount in punitive damages with judicial interest thereon from date of judicial demand until paid.

Under COUNT TWO – STATE DUE PROCESS, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, and against the defendants, Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the Jefferson Parish School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his capacity as Jefferson Parish Sheriff, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT THREE – STATE FALSE ARREST, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, and against the defendants, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his capacity as Jefferson Parish Sheriff, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT FOUR – MALICIOUS PROSECUTION, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, and against the defendants, Guy Faber, the Jefferson Parish School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his capacity as Jefferson Parish Sheriff, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest

thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT FIVE – DEFAMATION, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, and against the defendants, Guy Faber, the Jefferson Parish School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his capacity as Jefferson Parish Sheriff, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Under COUNT SIX – STATE DELICTUAL LIABILITY, plaintiff prays that, after due proceedings, the Court render judgment in favor of plaintiff, Crystal Stokes, individually and on behalf of her minor child, LB, and against the defendants, Guy Faber, Sharon Meggs-Hamilton, Valerie Johnson, Brandon Williams, the Jefferson Parish School Board, Billy Matranga, David Malveaux, and Joseph P. Lopinto, in his capacity as Jefferson Parish Sheriff, in solido, for monetary relief in an amount of that is reasonable in the premises with judicial interest thereon from date of judicial demand until paid, and for all costs of these proceedings with all expert fees taxed as costs of court.

Respectfully Submitted:

Attorneys for Crystal Stokes, individually
and on behalf of her minor child, LB,
Plaintiff

_____
JOHN A. VENEZIA (#23963)
jav@venezialaw.net
JULIE O'SHESKY (#36245)
jeo@venezialaw.net
Venezia & Associates (APLC)
757 St. Charles Avenue, Suite 302
New Orleans, LA 70130
(504) 486-3910 voice
(504) 486-3913 fax
-and-
WILLIAM B. GORDON (#28056)
WGordon@smclattorneys.com
400 Poydras Street, Suite 1990
New Orleans, LA 70130
(504) 236-6654

**PLEASE ISSUE SUMMONS TO:**

Guy Faber,
Wherever found

Valerie Johnson,
4301 Grace King Place
Metairie, LA

The Jefferson Parish School Board,
Through its Superintendent
Dr. Cade Brumley
501 Manhattan Blvd.
Harvey, LA

Lt. David Malveaux,
725 Maple Ave.
Harvey, LA

Sharon Meggs-Hamilton,
4301 Grace King Place
Metairie, LA

Brandon Williams,
Wherever found

Sgt. Billy Matranga,
4301 Grace King Place
Metairie, LA

Joseph P. Lopinto, in his official capacity as
Jefferson Parish Sheriff,
1233 Westbank Expressway
Harvey, LA