UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRYSTAL STOKES, INDIVIDUALLY AND ON BEHALF OF HER MINOR SON L.B. | CIVIL ACTION |
| VERSUS | NO: 19-1642 |
| GUY FARBER, ET AL. | SECTION: "A" (3) |

**ORDER AND REASONS**

The following motion is before the Court: **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 35)** filed by defendant, Guy C. Farber (incorrectly referred to in the complaint as "Guy Faber"). The plaintiff, Crystal Stokes, individually and on behalf of her minor child L.B., opposes the motion. The motion, submitted on January 8, 2020, is before the Court on the briefs without oral argument.[1]

**I. BACKGROUND**

This complaint arises out of an incident that occurred at a public high school in Jefferson Parish. L.B. is the minor child of the plaintiff, Crystal Stokes. In the fall of 2018, L.B. was a fifteen-year old 10th grader at Grace King High School in Metairie, Louisiana. (Rec. Doc. 1, Complaint ¶ 14). In February 2018 L.B. was formally arrested by the Jefferson Parish Sheriff's Office for terrorizing in violation of La. R.S. § 14:40.1.[2]

---

[1] Plaintiffs filed a request for oral argument but the Court is not persuaded that oral argument would be helpful at this time.

[2] La. R.S. § 14:40.1, entitled Terrorizing, states:

> A. Terrorizing is the intentional communication of information that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, with the intent of causing members of the general public to be in sustained fear for their safety; or causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the general public.

L.B. was suspended from Grace King and expelled. All charges were eventually dismissed. Stokes filed this action to recover for the wrongful arrest and school discipline that L.B. was subjected to in light of the terrorizing charge.

The events giving rise to this action are alleged as follows and the Court accepts them as true for purposes of the instant motion to dismiss:[3]

On or about the morning of February 21, 2018, L.B. was in his second period health class when his teacher, defendant Guy Farber, began a discussion with the students about the recent high school shootings elsewhere in the country. Mr. Farber stated to his students that the stereotypical high school shooter was a white male. L.B, a male, was the only white person in the classroom of approximately 25 students and the only person who fit Mr. Farber's description of the stereotypical high school shooter. The other students began to make jokes about L.B. fitting Mr. Farber's description. For instance, several students jokingly asked L.B. to spare them from being shot. L.B. went along with the jokes and told them they would be okay. The entire class, including Mr.

---

> B. It shall be an affirmative defense that the person communicating the information provided for in Subsection A of this Section was not involved in the commission of a crime of violence or creation of a circumstance dangerous to human life and reasonably believed his actions were necessary to protect the welfare of the public.
>
> C. Whoever commits the offense of terrorizing shall be fined not more than fifteen thousand dollars or imprisoned with or without hard labor for not more than fifteen years, or both.

[3] The comprehensive recitation of events contained in this ruling is taken nearly verbatim from the original complaint. No party should construe any statement contained in the ruling's Background section as a factual finding by this Court. The recitation includes Plaintiffs' characterization of the events described, including allegations of malicious intent. The Court neither agrees nor disagrees with Plaintiffs' characterization of the events alleged in the complaint. The Court has opted to include in this ruling the nearly verbatim allegations with only minimal changes because the complaint is well-written and very effectively organizes the factual allegations underlying Plaintiffs' claims.

Farber, laughed at those jokes. (Comp. ¶ 15).

One student, continuing the joke about L.B. fitting Mr. Farber's description of the stereotypical high school shooter, got out of his desk, walked to the front of the classroom, drew a large caricature of L.B. on the white board affixed to the front of the classroom, and wrote the words "Future School Shooter" in large letters above the caricature. Another student asked the drawing student to change the hair on the caricature to match L.B.'s hair more closely. Several students asked L.B. to pose next to the drawing so that they could take photographs. Mr. Farber observed the student draw the caricature and words above it and heard the students ask L.B. to pose next to the drawings so that they could take photographs. Mr. Farber took no steps to discourage his students' actions and instead laughed along with the students at the drawings on the whiteboard. (Comp. ¶ 16).

To go along with the students and Mr. Farber's joke about him fitting Mr. Farber's description of the stereotypical high school shooter, L.B. complied with the students' request, got out of his desk, walked to the front of the classroom, and posed next to the caricature, while several of the other students took photographs with their cellphones. Mr. Farber observed all this conduct yet took no action to stop or even dissuade the students. Again, Mr. Farber laughed along with his students when L.B. posed next to the caricature while the students photographed L.B. L.B. walked around the class giving hand gestures, such as "fist bumps" to the students in response to their jests asking L.B. to spare them. Mr. Farber observed all of this and laughed along with his class. (Comp. ¶ 17).

The following morning, L.B. went to his first period class. The school's dean of students came to L.B.'s classroom and asked him to come to the principal's office. At the office, he met with Sgt. Billy Matranga of the Jefferson Parish Sheriff's Office (another

defendant herein), who was wearing a police uniform and badge, as well as carrying a firearm. Sgt. Matranga restrained L.B. with handcuffs and placed him in the rear of a marked police vehicle parked outside of the school. Sgt. Matranga then brought L.B. to the Jefferson Parish Sheriff's Office Detective Bureau in Harvey, Louisiana. Sgt. Matranga then locked L.B. in a holding cell for over an hour. (Comp. ¶ 18).

Sgt. Matranga contacted L.B.'s mother, Crystal Stokes, and asked her to come to the detective bureau. When she arrived, Sgt. Matranga brought her to the cell where he had imprisoned L.B. Sgt. Matranga questioned L.B. about the photographs and possibly a video of L.B. posing next to the caricature in health class. Sgt. Matranga advised that the photographs of L.B. that the other students had posted circulated through social media sites and this caused parents and members of the media to contact the school and the Jefferson Parish Sheriff's Office. During the questioning, Sgt. Matranga learned that during L.B.'s health class Mr. Farber told the students that the stereotypical school shooter was a white male, which led the other students to joke with L.B. because he was the only one to fit this description; that another student drew the picture and caption; that the other students asked L.B. to pose with the drawings; and that other students, but not L.B., posted the photographs on social media. Sgt. Matranga learned that the teacher, Mr. Farber, had full view of L.B. complying with the other students' request and that Mr. Farber gave his tacit consent to the students' actions. Sgt. Matranga was aware that Mr. Farber was present during this entire episode, initiated the joke that led to L.B. appearing in the photographs standing next to the caricature and caption on the whiteboard and laughed along with the students. (Comp. ¶ 19).

On information and belief, Sgt. Matranga's supervisor, Capt. David Malveaux (another defendant herein) learned of the above circumstances that led to L.B.

appearing in the photographs, including that Mr. Farber started and participated in this joke with the students in his class. (Comp. ¶ 20).

On or about February 22, 2018, at 8:15 a.m., Mr. Farber signed a document stating that in his health class the day before, "someone" wrote the caption next to the caricature of L.B., but that he had not noticed it until "after the students left the room." Mr. Farber claimed that he saw L.B. draw a picture of himself earlier and that he "did not have an opportunity to ask the students because they were all gone." These statements were false as Mr. Farber was fully aware of who wrote the caption and the caricature during class. Mr. Farber intentionally made these false statements to avoid trouble for himself because of public concern about what occurred in his classroom. (Comp. ¶ 21).

Anyone seeing the photographs of L.B. standing next to the caricature and caption that the students posted on social media and being aware of the layout of the classroom would instantly realize that it was nearly impossible for Mr. Farber to have signed a truthful document. It was nearly impossible for someone to have been in that classroom and missed seeing the drawings, posing, and photographs being taken at the very front of the classroom. (Comp. ¶ 22).

Sgt. Matranga and Capt. Malveaux were aware of the photographs and layout of the classroom and thus aware of the implausibility of the statements in the document Mr. Farber signed. (Comp. ¶ 23).

On information and belief, Sgt. Matranga and Capt. Malveaux read the document Mr. Farber signed and realized it lacked credibility. (Comp. ¶ 24).

Additionally, all students who were present in the classroom were aware of Mr. Farber's involvement and that the photographs were produced at the request of the

other students to further the joke initiated by the teacher's comments about the stereotypical shooter being a white male and L.B. fitting that description. Sgt. Matranga, and on information and belief Capt. Malveaux, either interviewed the other students present in the classroom and disregarded their statements, or improperly failed to conduct such interviews before taking any action against L.B. (Comp. ¶ 25).

Despite knowing that the photographs were the result of a joke that the students' teacher initiated, Sgt. Matranga and Capt. Malveaux decided to formally arrest L.B., accusing him of violating Louisiana's criminal terrorizing statute. (Comp. ¶ 26). Stokes contends that these officers lacked probable cause to arrest L.B. and were completely aware of his innocence yet they chose to arrest him in order to quell the public concern resulting from the other children posting the photographs of L.B. (*Id.* ¶¶ 27, 28).

Sgt. Matranga placed L.B. in handcuffs and then transported L.B. to the Rivarde Detention Center in Gretna, Louisiana, where L.B. was formally booked, which included fingerprinting and having his "mug shot" taken. Sgt. Matranga prepared or gave information that went into a "Juvenile Arrest Register" that falsely stated that L.B. had given a voluntary statement admitting that he knowingly created "terror in the school, students, faculty, staff, and parents." Sgt. Matranga deliberately lied in this document to justify his arrest of L.B. while knowing that it would be used by the courts and others to wrongfully restrain L.B.'s freedom. Sgt. Matranga omitted any mention of Mr. Farber's involvement in the incident from the "Juvenile Arrest Register" for the same malicious reasons. (Comp. ¶¶ 29, 30).

Sgt. Matranga wrote, and Capt. Malveaux approved, a police report describing the reasons for arresting L.B. The report failed to mention a single word about Mr. Farber being present and involved in the joke that led to L.B. appearing in the pictures.

These officers intentionally repressed these exculpatory facts from being made known to those reviewing the report, such as the Jefferson Parish District Attorney or the courts. Sgt. Matranga and Capt. Malveaux excluded this information from the report so that their arrest of L.B. would appear justified. (Comp. ¶ 31).

L.B. spent the night in jail. The following morning, he went to the Jefferson Parish Juvenile Court. The judge in that court allowed L.B. to be released but only on the conditions of house arrest and that L.B. wear an electronic ankle bracelet monitoring device. On information and belief, the judge was unaware of Mr. Farber's involvement in the events leading to L.B.'s arrest because Sgt. Matranga and Capt. Malveaux omitted this information from the documents submitted to the Juvenile Court for the judge to consider when determining the conditions of a juvenile's release. Had Sgt. Matranga and Capt. Malveaux made that court aware of Mr. Farber's involvement, the judge would have released L.B. on lesser or no conditions at all. (Comp. ¶ 32).

After receiving Sgt. Matranga's and Capt. Malveaux's report that omitted Mr. Farber's involvement and the "Juvenile Arrest Register" that falsely described L.B.'s statement, the Jefferson Parish District Attorney filed a Petition in the Jefferson Parish Juvenile Court on or about February 27, 2018, accusing L.B. of committing the crime of terrorizing. (Comp. ¶ 33).

According to Stokes, by February 23, 2018, Grace King's principal, Sharon Meggs-Hamilton (another defendant herein), and on information and belief the school's disciplinarian, Valerie Johnson (another defendant herein), were fully aware of the events that occurred in health class, including that Mr. Farber initiated the joke that L.B. looked like a stereotypical school shooter; that a different student drew the caricature and words above it; that the other students asked L.B. to pose in front of the caricature

so they could take pictures; that it was the other students who posted the pictures; and that Mr. Farber was present and laughed along with the students at what was perceived by all as a joke. They were aware of the incredibility of Ms. Farber's written statement denying his knowledge of how the picture came into being. Nonetheless, Ms. Meggs-Hamilton, and on information and belief Ms. Johnson, decided to suspend L.B. from school. (Comp. ¶ 34).

During the suspension, L.B. did not receive any teaching, educational resources, materials, or any aids to keep up with his classwork. The suspension lasted for about two weeks when Ms. Meggs-Hamilton, and on information and belief Ms. Johnson, decided to recommend that the School Board expel L.B. from Grace King High School, despite these defendants' awareness that L.B. did nothing without the approval of his teacher and nothing in violation of any school rules. (Comp. ¶ 35).

On or about March 8, 2018, Brandon Williams acted as the School Board's hearing officer to determine whether to follow the recommendation to expel L.B. During the hearing, Ms. Meggs-Hamilton provided an oral statement to the hearing officer merely saying that L.B. was implicated in the photographs. She failed to provide Mr. Williams the exculpatory information that Mr. Farber initiated the joke and was present for the entire incident. L.B. also gave a statement that more fully described the incident and Mr. Farber's involvement. Nothing in this hearing suggested in any way that L.B. violated any school or School Board rule. Nonetheless, Mr. Williams approved the recommendation to expel L.B. On information and belief, the School Board ratified Mr. Williams's decision. (Comp. ¶ 36).

Ms. Meggs-Hamilton, Ms. Johnson, Mr. Williams, and the School Board were fully aware that L.B. did not violate any school or School Board rule and that he acted

with the full consent of his teacher, yet decided to have him expelled nonetheless. Their actions were malicious and in bad faith as their motive was to quell the public concerns and not because of any good faith belief that L.B. did anything wrong. (Comp. ¶ 37).

L.B. was then forced to go to school at John H. Martyn Alternative School in Jefferson, Louisiana, a place the School Board sends "at-risk students." When he first arrived, a fellow student approached L.B. while he was eating lunch on a bench and pushed him off the bench, accusing him of being a school shooter. Ms. Meggs-Hamilton, Ms. Johnson, and Mr. Williams knew, or were substantially certain, that their wrongful expulsion of L.B. would force him to attend a school with the "at-risk students," which would subject him to the increased risk of violence. (Comp. ¶¶ 38, 39).

Ms. Stokes was forced to retain an attorney to defend her son against the petition filed in Juvenile Court. On or about March 16, 2018, L.B.'s attorney requested that the Jefferson Parish Juvenile Clerk of Court issue a subpoena to Mr. Farber to appear in that court. On information and belief, the Jefferson Parish District Attorney learned about Mr. Farber's involvement because of L.B.'s counsel's subpoena request, realized L.B.'s clear innocence, and on March 28, 2018, dismissed the Petition. The Juvenile Court judge then removed the restrictions on L.B.'s release. (Comp. ¶ 40).

L.B. finished the remaining school year at John H. Martyn Alternative School. The School Board advised that he was to return to Grace King High School for the following school year. L.B. and his mother feared for L.B.'s safety at Grace King High School because the officers' arrest and the school administrators' expulsion of him gave credence to the erroneous belief that he had planned on being a school shooter. A counsellor at John H. Martyn Alternative School wrote a letter to the School Board urging that L.B. not have to attend Grace King because of his fears. L.B. has attended

Riverdale High School since then. Riverdale is much further away from Ms. Stokes's home than is Grace King, creating a hardship and expenses associated with the longer travel for L.B. to attend school. (Comp. ¶ 41).

Stokes and L.B. contend that the actions of the defendants have caused and continue to cause them to suffer the loss of L.B.'s freedom while he was arrested, jailed, and restricted by the Jefferson Parish Juvenile Court, the incurrence of attorneys' fees in connection with L.B.'s wrongful arrest and prosecution, the loss of Ms. Stokes' income while she had to miss work to attend court and other matters related to this incident, damage to L.B.'s reputation, as well as mental anguish and emotional distress. (Comp. ¶ 42). Stokes and L.B. have sued Farber (teacher), Meggs-Hamilton (principal), Johnson (disciplinarian), Williams (hearing officer), the Jefferson Parish School Board (as employer of Farber, Meggs-Hamilton, Johnson, and Williams), Sgt. Matranga, Captain Malveaux, and Joseph P. Loptino, in his official capacity as the Sheriff of Jefferson Parish (employer of Matranga and Malveaux).

Plaintiffs have asserted a host of state law claims (due process, false arrest/battery, malicious prosecution, defamation, and generic delictual liability) against all defendants. Original subject matter jurisdiction is grounded on Plaintiffs' reliance on 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.[4] (Comp. ¶ 44).

Defendant Guy C. Farber now moves to dismiss the complaint in its entirety

---

[4] This circuit has long applied the "general rule" that "a court should decline to exercise jurisdiction over remaining state law claims when all federal claims are eliminated before trial." *IntegraNet Phys. Res., Inc. v. Tex. Indep. Prov., LLC*, 945 F.3d 232, 241 (5th Cir. 219) (citing *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). The parties should remain mindful of this rule.

pursuant to Rule 12(b)(6). As noted above, Farber was L.B.'s teacher at the time of the incident. Farber contends that the allegations in the complaint fail to suggest that Farber played any part in criminally charging L.B. or disciplining him. Therefore, Farber contends that no tort, constitutional or otherwise, can be established against him. Should the Court agree with that argument then Plaintiffs request leave to amend their complaint to cure any pleading deficiencies.

A jury trial is scheduled to commence on March 9, 2020. (Rec. Doc. 23).

**II.    DISCUSSION**

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id*. The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id*. (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id*. (quoting *Iqbal*, 129 S. Ct. at 1950). Moreover, a claim that is not based on a cognizable legal theory is not plausible on its face. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-37 (S. D. Tex. 1998) (citing *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1990); *Vines v. City of Dallas*, 851 F. Supp. 254, 259 (N.D. Tex. 1994)).

The actionable conduct alleged with respect to Farber is as follows: 1) Farber laughed along with his students as they joked about L.B. being a potential school shooter, 2) he failed to intervene or dissuade his students when they drew the caricature on the whiteboard and began to take photos of L.B. posing with the drawing, and 3) on the morning after the incident Farber signed a document that contained false statements about the incident in order to avoid trouble for himself. Farber argues, and this Court agrees, that even if the first two allegations constitute conduct inappropriate for a teacher, they raise no federal concerns of a constitutional nature.

The factual allegations of Farber's involvement in any of the events described in the complaint end with the allegedly false document that he signed on the morning after the classroom incident. There is no suggestion that Farber ever actively worked with or involved himself with law enforcement to have L.B. arrested and charged, or with school administrators to have L.B. suspended and expelled. Presumably Farber was questioned by law enforcement and school administrators about the terrorizing incident and there is no allegation that he was untruthful with them. Thus, Farber's culpability for any of

the injuries that Plaintiffs sustained begins and ends with the allegedly false document that he signed.[5]

But as Farber points out in his motion to dismiss, the factual allegations in the complaint actually exonerate him of any fault for the initial arrest, the restrictions on L.B.'s freedom, the school imposed discipline, and the criminal charges. The allegations that Plaintiffs make against Matranga and Malveaux—the police officers actually responsible for the decision to arrest L.B.—belie the assertion that Farber's statement played any role in the officers' probable cause determination or the decision to arrest L.B. much less for the District Attorney to file criminal charges. Specifically, Plaintiffs have alleged that Matranga and Malveaux knew that Farber's statement was implausible and lacked credibility (Comp. ¶¶ 23, 24), that Matranga and Malveaux either interviewed the students that were in classroom that day yet disregarded their statements or improperly failed to conduct such interviews prior to the arrest (Comp. ¶ 25), that prior to the arrest Matranga and Malveaux knew that the photographs were the result of a joke that Farber had initiated yet they decided nonetheless to formally arrest L.B. for terrorizing (Comp. ¶ 26), that prior to the arrest Matranga and Malveaux were completely aware of L.B.'s innocence and had no good faith belief that he had

---

[5] The Court has not seen a copy of Farber's statement but there has been no suggestion that the statement affirmatively accused L.B. or anyone else of criminal conduct. So this case is not one where the defendant is accused of making a false accusation against a specific person in order to incriminate him. In fact, Plaintiffs contend that Farber made the untruthful statement in order to "save his own skin" and to absolve himself of responsibility for the public scandal that resulted from the events that took place in his classroom. (Comp. ¶ 21; Rec. Doc. 38, Opposition at 16). So this case is not one where the defendant is accused of lying to law enforcement out of malice in order to subject the plaintiff to criminal charges. And according to Plaintiffs, it was concerned parents and members of the media who contacted law enforcement after the photographs had appeared on social media, not Farber. (Comp. ¶ 19).

committed a crime yet chose to arrest him anyway in order to quell public concerns (Comp. ¶ 28), that Matranga deliberately lied when providing information to the Juvenile Arrest Register knowing that a court would rely on that information in order to restrain L.B.'s freedom (Comp. ¶ 30), and that Matranga and Malveaux approved a police report that intentionally omitted Farber's involvement in the classroom "joke" so that the arrest would appear justified to the District Attorney (Comp. ¶ 31). Similarly, Plaintiffs allege that the school administrator defendants were fully apprised of the "joke" and of Farber's true role in the incident when they decided to take disciplinary action against L.B. (Comp. ¶¶ 34, 35).

Thus, Plaintiffs' theory of the case against all of the other defendants contradicts the key assertion underlying their theory of the case against Farber for false arrest and for the subsequent disciplinary action, *i.e.*, that it was Farber's allegedly false statement that caused all of the damage or even contributed to it. The chain of causation between anything that Farber did and the injuries that Plaintiffs' suffered is broken. There are no factual allegations to support conspiracy or joint action between Farber and any other defendant as to any constitutional violation. In fact, Plaintiffs' allegations against Matranga and Malveaux do not even allude to the possibility of these officers having been influenced in their allegedly unconstitutional actions by what was in Farber's statement.

The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir. 2000) (citing *Albright*, 510 U.S. at 271). The complaint in this case alludes generally to violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in addition to a federal due process violation. Before filing his

committed a crime yet chose to arrest him anyway in order to quell public concerns (Comp. ¶ 28), that Matranga deliberately lied when providing information to the Juvenile Arrest Register knowing that a court would rely on that information in order to restrain L.B.'s freedom (Comp. ¶ 30), and that Matranga and Malveaux approved a police report that intentionally omitted Farber's involvement in the classroom "joke" so that the arrest would appear justified to the District Attorney (Comp. ¶ 31). Similarly, Plaintiffs allege that the school administrator defendants were fully apprised of the "joke" and of Farber's true role in the incident when they decided to take disciplinary action against L.B. (Comp. ¶¶ 34, 35).

Thus, Plaintiffs' theory of the case against all of the other defendants contradicts the key assertion underlying their theory of the case against Farber for false arrest and for the subsequent disciplinary action, *i.e.*, that it was Farber's allegedly false statement that caused all of the damage or even contributed to it. The chain of causation between anything that Farber did and the injuries that Plaintiffs' suffered is broken. There are no factual allegations to support conspiracy or joint action between Farber and any other defendant as to any constitutional violation. In fact, Plaintiffs' allegations against Matranga and Malveaux do not even allude to the possibility of these officers having been influenced in their allegedly unconstitutional actions by what was in Farber's statement.

The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir. 2000) (citing *Albright*, 510 U.S. at 271). The complaint in this case alludes generally to violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in addition to a federal due process violation. Before filing his

motion to dismiss, Farber served Plaintiffs with discovery in order to have them articulate which specific federal rights they believe that *he* violated.[6] (Rec. Doc. 35-3). Plaintiffs' response to that interrogatory essentially recited the litany of rights named in the complaint, even though there appears to be no set of facts to support a plausible claim that Farber violated L.B.'s First, Fifth, and Eighth Amendment rights. (*Id.* at 3). Farber filed his motion to dismiss nonetheless, and in their opposition Plaintiffs do not mention the First, Fifth, and Eighth Amendments vis à vis Farber. These claims are therefore waived as to Farber. Instead, Plaintiffs argue that by providing a false statement about what occurred in his classroom Farber violated L.B.'s Fourth Amendment right to be free from arrest without probable cause.[7] But again, the factual

---

[6] Under 42 U.S.C. § 1983 a defendant is only liable for his own personal conduct, not the conduct of other state actors. *See Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015). The complaint contains no allegations to suggest a conspiracy between any of the defendants or any type of joint action amongst them.

[7] The Court assumes that it has understood Plaintiffs' opposition correctly with respect to their federal claim. Plaintiffs' opposition demonstrates an inclination to be non-committal when confronted with the issue of identifying the specific constitutional right that Farber allegedly violated when he submitted the false statement. In his motion Farber characterizes Plaintiffs' § 1983 claim against him as being based on a nebulous due process violation. (Rec. Doc. 35-1, Memorandum at 8). In their opposition Plaintiffs argue in favor of a Fourth Amendment violation while calling it a federal due process claim. This is not incorrect because one form of substantive due process is the substantive protections in the Bill of Rights—like those afforded by the Fourth Amendment—that have been "incorporated" into the Fourteenth Amendment to apply to the states. *John Corp.*, 214 F.3d at 577 n.3 (citing *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)). But Plaintiffs have not argued in favor of nor alleged facts in support of a *substantive* due process claim against Farber. Substantive due process serves to prevent governmental power from being "used for purposes of oppression," *John Corp.*, 214 F.3d at 577 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)), and the complaint fails to allege on the part of Farber the type of egregious and shocking conduct necessary to support a substantive due process claim, *see County of Sacramento v. Lewis*, 523 U.S. 833 (1998). And where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior "that Amendment and not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Thus, Plaintiffs' federal false arrest claim against Farber must be analyzed under Fourth Amendment standards, not

allegations that Plaintiffs rely upon to implicate the other defendants eviscerate any inference that L.B. was arrested and subjected to the subsequent proceedings (both criminal and administrative) because of Farber's statement. The Court is persuaded that at best, Plaintiffs have pleaded a state law tort claim against Farber.

The instant motion is the first dispositive motion that the Court has received in this case and it merely tests the pleadings against one defendant even though all defendants have now answered the lawsuit and trial is imminent. All deadlines from the scheduling order have elapsed. The Court would think that the depositions of key witnesses would be particularly enlightening as to the issues raised in Farber's motion yet the Court has not seen any evidence whatsoever in this case including the allegedly false statement that Farber gave after the incident. The issues raised in Farber's motion would be more conducive to a motion for summary judgment rather than a Rule 12(b)(6) motion.

Plaintiffs have requested leave to amend their complaint to cure any pleading deficiencies. With discovery presumably completed, Plaintiffs cannot at this time simply amend their complaint to include conclusory alternative theories of liability. Plaintiffs should know by now, having surely deposed Matranga and Malveaux, whether Farber's statement played any role in the arrest. The same is true with respect to the school disciplinary proceedings. Moreover, it may be implausible that anyone would have

---

those of substantive due process.
  The Court notes that when Farber filed his motion to dismiss he did not believe that the false arrest claim was being asserted against him. (Rec. Doc. 35-1, Memorandum at 6 n.3). This belief was not unreasonable given Plaintiffs' reference to a nebulous federal due process claim and the manner in which they responded to Farber's interrogatory on this very issue. Farber therefore addressed the Fourth Amendment claim in his reply memorandum.

relied on Farber's statement to take action against L.B.—in fact, Plaintiffs have alleged expressly the facial incredibility of the statement—but the Court has yet to see the statement. And if the officers had probable cause to arrest L.B. even without Farber's statement then there is no Fourth Amendment violation for false arrest. But these are issues that the Court cannot resolve on the pleadings.[8]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 35)** filed by defendant Guy C. Farber is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to all constitutional law claims (both state and federal) against Farber and as to any claims under 42 U.S.C. § 1985, which Plaintiffs did not address in their opposition. The motion is **DENIED** as to the remaining state law tort claims.

**IT IS FURTHER ORDERED** that Plaintiffs shall move to amend their complaint as to the Fourth Amendment claim (the only federal claim addressed in the opposition) within ten (10) working days from entry of this Order.

January 27, 2020

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[8] An issue not raised although one that concerns the Court for purposes of the § 1983 claim is whether Farber engaged in state action when he signed the allegedly false document. Everyone seems to assume that he did so simply because he is a public school teacher. The Court is not so certain that in signing the document Farber acted under color of state law. *See Ortolaza v. Capitol Region Educ. Council*, 388 F. Supp. 3d 109 (D. Conn. 2019).